RECEIPT # _____
AMOUNT $ 350.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK _J. James_
DATE 9/27/2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEVEN S. GOLD )
                  Plaintiff )
v. )
ACADEMY COLLECTION SERVICE, INC. )
        And )
RESURGENT CAPITAL SERVICES, LP )
d/b/a LVNV FUNDING, LLC )
                  Defendants )

Civil Action No.

**06 CA 11735 GAO**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

MAGISTRATE JUDGE _Collings_

## INTRODUCTION

1. Plaintiff, STEVEN S. GOLD, a natural person residing in Boston, Massachusetts and an aggrieved consumer (hereinafter "Plaintiff"), seeks damages for the Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692k ("FDCPA"), the Massachusetts Statute Regulating Debt Collection Activities, M.G.L. c.93 § 49 ("Massachusetts Debt Collection Act"), and the Massachusetts Consumer Protection Act, M.G.L. c.93A §§ 1-9 ("Consumer Protection Act"). These statutes prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

## JURISDICTION

2. This Court's jurisdiction arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Supplemental jurisdiction

1

exists pursuant to 28 U.S.C. § 1367 for the claims under the Massachusetts Debt Collection Act and the Consumer Protection Act. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue in this District is proper in that the Defendants transact business here, and the conduct complained of occurred here.

## PARTIES

4. Plaintiff, STEVEN S. GOLD, is an individual consumer who resides at 354 Commonwealth Avenue, Boston, Massachusetts.

5. Defendant, ACADEMY COLLECTION SERVICES, INC. ("Academy" or "Defendant"), is a corporation organized under applicable law with its principal place of business located at 10965 Decatur Road, Philadelphia, Pennsylvania. To the best of Plaintiff's knowledge and belief, Academy's principal business involves the collection of consumer debts on behalf of third-party creditors and debt purchasers.

6. Defendant, RESURGENT CAPITAL SERVICES, LP d/b/a LVNV FUNDING, LLC ("Resurgent" or "Defendant"), is a corporation organized under applicable law with its principal place of business located at 15 South Main Street, Suite 600, Greenville, South Carolina. To the best of Plaintiff's knowledge and belief, a significant portion of Resurgent's business involves the purchasing of charged-

off or defaulted consumer debts from various creditors or subsequent holders of consumer debt.

## FACTUAL ALLEGATIONS

7. Prior to December 11, 2002, Plaintiff and Citibank South Dakota, N.A. ("Citibank") entered into a contract granting Plaintiff access to an unsecured, revolving line of credit in connection with an AT&T Universal Card account (the "AT&T Account"). The last four numbers of the AT&T Account are 8066. In return, Plaintiff agreed to make monthly payments of principal and accrued interest.

8. As of the year 2002, Plaintiff had experienced a series of financial and personal setbacks, including sustained periods of unemployment and a serious automobile accident. These events created significant financial problems, such that he was unable to pay his bills as they came due.

9. On December 10, 2002, Plaintiff retained the services of Hendel & Collins, P.C. ("H&C") to represent Plaintiff in connection with his inability to pay his creditors as payments became due.

10. On December 11, 2002, H&C sent a letter to Citibank c/o AT&T Universal Card with respect to the AT&T Account. The letter advised Citibank that Plaintiff had retained H&C to represent him, and, pursuant to the Massachusetts Consumer Protection Act, all direct contact must cease and all future communications concerning the

3

account must be directed to H&C.  A copy of this letter is attached as Exhibit "A."

11.   H&C's December 11, 2002 letter also informed Citibank that Plaintiff had been involved in an auto accident, and had incurred large, uninsured medical costs. The letter further stated that Plaintiff had experienced long periods of unemployment and he had no attachable assets.

12.   Upon information and belief, between December 11, 2002 and January 28, 2003, United Recovery Systems, Inc. began collection on the AT&T Account.

13.   On January 28, 2003, H&C sent a letter to United Recovery Systems, Inc. explaining Plaintiff's personal and financial circumstances and again demanding that all future correspondence regarding the AT&T Account be sent to H&C, not directly to Plaintiff, in accordance with the Massachusetts Consumer Protection Act and Fair Debt Collection Practices Act.  A copy of this letter is attached as Exhibit "B."

14.   Upon information and belief, between January 28, 2003 and April 24, 2006, United Recovery Systems, Inc. assigned and/or sold the AT&T Account to Defendant Resurgent.

15.   Upon information and belief, during that same time period, Resurgent placed the AT&T Account for collection with Defendant Academy.

4

16. Upon information and belief, when Resurgent purchased the AT&T Account, it had actual knowledge that Plaintiff was represented by H&C.

17. Plaintiff submits that when Resurgent placed the AT&T Account for collection with Academy, Resurgent was obligated to disclose to Academy the fact that H&C represented Plaintiff. Accordingly, in light of Resurgent's disclosure obligation, Plaintiff believes that Academy also had actual knowledge that H&C represented Plaintiff regarding the AT&T Account, and that direct contact with Plaintiff was prohibited pursuant to federal and state laws and regulations.

18. Despite both Defendants' actual notice of Plaintiff's representation by H&C, Academy began aggressively contacting Plaintiff with unreasonable frequency, using both mail and telephone in attempts to collect a debt alleged to be owed on the AT&T Account.

19. On April 24, 2006, Academy began to harass Plaintiff by calling him directly on multiple occasions during the same week.

20. The content and frequency of Defendants' communications with Plaintiff constitute harassment within the meaning of the FDCPA and Chapter 93A.

21. On April 24, 2006, Academy called Plaintiff, but no message was left.[1]

22. On April 25, 2006, Chris Meyers from Academy left a message on Plaintiff's answering machine.[2]

23. On April 26, 2006, Academy called Plaintiff, but no message was left.[3]

24. On April 27, 2006, an individual who identified himself as Marcus Jenkins called Plaintiff directly and left a voice message on Plaintiff's answering machine. A transcribed copy of Mr. Jenkins' message is attached as Exhibit "C."

25. In the April 27 voice message, the Academy representative stated: "the initial complaint was brought to my attention on Friday, April the 21st . . . I wanted to give you, uh, at least a chance to receive the letter I sent to you. I'm not sure if you received it or not. You haven't corresponded, *I haven't received anything from your attorney*, or anything . . ." (Emphasis added.)[4]

---

[1] As recorded on Plaintiff's caller ID, the call was made from 800-220-0605, Academy's toll-free debt collection number.
[2] Chris Meyers did not identify the debt collection agency for which he worked, but Plaintiff discovered that Academy was responsible based upon the call-back number given in the message.
[3] No message was left, but Academy's toll-free collection number was recorded on Plaintiff's caller ID.
[4] Marcus Jenkins did not identify the debt collection agency for which he worked, but Plaintiff discovered that Academy was responsible based upon the call-back number given in the message. Also, the file number mentioned in the message, 12376178, is the same as that listed on Academy's April 25, 2006 letter. A copy of this letter is attached as Exhibit "D."

6

26. Notwithstanding Defendants' acknowledgement that they were aware of Plaintiff's representation by H&C, as evidenced by the italicized portion of the April 27, 2006 phone message described above, Academy continued calling Plaintiff directly at his home.

27. During that same week, in addition to the afore-mentioned calls placed on April 24, 25, 26, and 27, Academy also called Plaintiff at home on April 28 and 29.

28. On April 28, 2006, Ms. Smith of Academy placed a call directly to Plaintiff's home.[5]

29. On April 29, 2006, a computerized voice message, which identified itself as coming from Academy, was left on Plaintiff's home answering machine.

30. As described in the above paragraphs, while acknowledging that Plaintiff was represented by counsel, Academy made no fewer than 6 telephone calls to Plaintiff within a single week in attempts to collect the alleged debt.

31. Additionally, that same week, from Monday, April 24 to Sunday, April 30, Plaintiff received 9 calls listed as "Out of Area" or "Private." Upon information and belief, these 9 calls were made by Academy's automated call system.[6]

---

[5] Ms. Smith did not identify the debt collection agency for which she worked, but Plaintiff discovered that Academy was responsible based upon the call-back number given in the message.
[6] Under ordinary circumstances, Plaintiff rarely gets "Out of Area" calls.

7

32. Upon information and belief, Academy's pattern of telephonic debtor contact has the effect of bombarding alleged debtors with unreasonably frequent calls while obstructing efforts to ascertain the identity of the caller. This system as a whole, and specifically the failure to identify the caller, deprives alleged debtors of the ability to hold debt collectors accountable for their conduct and noncompliance with state and federal consumer protection laws and regulations.

33. Upon information and belief, Academy made these <u>15 calls within a single week with actual knowledge that H&C represented Plaintiff</u>.

34. On May 2, 2006, 9 days after the calls began, Plaintiff finally received written notice of the identity of the debt collector that had been harassing him. See Exhibit "D." This letter was postmarked Friday, April 28, 2006. A copy of the envelope in which the letter was enclosed is attached as Exhibit "E."

35. Upon information and belief, on Tuesday, May 2, 2006, the calls from Academy began again with renewed vigor. The following calls occurred on May 2, 2006:
   (a) At 8:47 a.m., Plaintiff received a call. No message was left, but Plaintiff's caller ID listed Academy's number;
   (b) At 5:37 p.m., Plaintiff received a call listed as "Private;"
   (c) At 6:30 p.m., Plaintiff received a second call listed as "Private;"

8

    (d)   At 6:33 p.m., just 3 minutes after the prior call, Mr. Gibson from Academy left Plaintiff a message; and

    (e)   At 7:05 p.m., Plaintiff received a call listed as "Out of Area."

36.   Plaintiff believes that each of the foregoing calls was placed by Academy. Thus, upon information and belief, Academy harassed Plaintiff with five calls in a single day. Four of those calls were made within the span of only an hour and a half, and two calls were only 3 minutes apart.

37.   On May 11, 2006, Plaintiff received a call from Academy's number. Moreover, on that day and on May 13, 2006, Plaintiff received two "Out of Area" calls believed to be from Academy. On May 16, 2006, John Carter from Academy called Plaintiff directly at his home.[7]

38.   In the one-week period between Wednesday, May 24 and Tuesday, May 30, 2006, Academy, through its representatives identified as Sara Sullivan, Dawn Carver, and its automated system, placed 4 calls directly to Plaintiff at home.[8]

39.   On May 26, 2006, H&C wrote Academy a letter demanding cessation of all direct contact. A copy of the

---

[7] John Carter did not identify the debt collection agency for which he worked, but Plaintiff discovered that Academy was responsible based upon the call-back number given in the message.

[8] On May 24, 2006, Sara Sullivan called, and on May 26, 2006, the automated system and Dawn Carver placed calls. Sara Sullivan called again on May 30, 2006. Except for the automated message, these representatives did not identify the debt collection agency for which they worked, but Plaintiff discovered that Academy was responsible based upon the call-back number given in the messages.

9

May 26, 2006 letter is attached as Exhibit "F." The letter confirmed H&C's continuous representation of Plaintiff, and reiterated that direct contact with Plaintiff was prohibited under the Massachusetts Consumer Protection and Debt Collection Acts. Furthermore, the May 26 letter referenced letters to the prior owners of the AT&T Account. As noted above, these letters each demanded cessation of direct contact.

40. The May 26, 2006 letter also demanded that Academy provide H&C with a detailed written verification of the alleged debt.

41. Academy did not comply with H&C's request for verification. Additionally, Academy failed to make a written tender of settlement within 30 days of the receipt of the May 26 letter.

42. Upon information and belief, as evidenced by Marcus Jenkins' April 27, 2006 message (para. 24 above), Defendants' violations of the Massachusetts Consumer Protection Act, the Massachusetts Debt Collection Act, and the FDCPA were willful and perpetrated with actual knowledge that Plaintiff was represented by counsel.

## COUNT I – UNLAWFUL COMMUNICATION AND HARASSMENT
### [Violations of the FDCPA]

43. Plaintiff repeats, re-alleges and incorporates by reference Paragraphs 1 through 42 above with the same force and effect as if fully set forth herein.

44. Upon information and belief, Academy Collection Services, Inc. and Resurgent Capital Services, LP d/b/a LVNC Funding, LLC (hereinafter referred to in this Count I as "Defendants") violated the FDCPA. Defendants' violations include, but are not limited to, the following:

(a) Defendants violated 15 U.S.C. § 1692c(a)(2) by contacting Plaintiff after they knew that Plaintiff was represented by counsel; and

(b) Defendants violated 15 U.S.C. § 1692d(5) by causing Plaintiff's telephone to ring or engaging in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Plaintiff. Such unlawful communications include the calls placed on April 24, 25, 26, 27, 28, 29, and 30, and May 2, 11, 13, 16, 24, 26, and 30. By calling Plaintiff repeatedly, despite actual knowledge that H&C represented Plaintiff, Defendants' actions constitute harassment, annoyance and abuse of Plaintiff.

45. Defendants' actions as described herein were willful and knowing.

46. As a result of the above-described violations of the FDCPA, Defendants are liable to Plaintiff in the sum of Plaintiff's actual and statutory damages, and attorneys' fees and costs.

### COUNT II – UNFAIR AND DECEPTIVE ACTS AND PRACTICES
[Violations of M.G.L. c.93, § 49, M.G.L. c.93A, § 2, and the Massachusetts Attorney General's Debt Collection Regulations ]

47. Plaintiff repeats, re-alleges and incorporates by reference Paragraphs 1 through 45 above with the same force and effect as if fully set forth herein.

48. Academy Collection Services, Inc. and Resurgent Capital Services, LP d/b/a LVNC Funding, LLC's (hereinafter referred to in this Count II as "Defendants") violations of the FDCPA as described in Count I above constitute independent violations of Chapter 93A.

49. Defendants violated the Massachusetts Consumer Protection Act, the Debt Collection Act, and the Massachusetts Attorney General's Debt Collection Regulations. Defendants' violations constitute unfair or deceptive acts or practices, and include, but are not limited to, the following:

(a) Defendants violated Mass. Gen. Laws c.93A, § 2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.04(1)(f), by engaging Plaintiff in communication via telephone, initiated by Defendants, in excess of two calls in each seven-day period at Plaintiff's residence. Specifically, during the week beginning on Monday, April 24, 2006, Plaintiff received 6 direct calls from Defendants and 9 "Out of Area/Private" calls, the latter of which, upon information and belief, were made by Defendant Academy's automated system.

Additionally, on May 2, 2006, Defendants harassed Plaintiff 5 times. Four of those calls were made within the span of only an hour and a half, and two calls were only 3 minutes apart. Also, between May 11 and 16, 2006,

Plaintiff received a total of four calls. Furthermore, between May 24 and May 30, 2006, Defendants placed 4 calls directly to Plaintiff;

(b)  Defendants violated Mass. Gen. Laws c.93A, § 2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.04(1)(d), by communicating by telephone without disclosure of the name of the business or company of the creditor. Specifically, Chris Meyers, Marcus Jenkins, Ms. Smith, Mr. Gibson, John Carter, Sara Sullivan, and Dawn Carver, all of whom are Defendant Academy's employees, left messages on Plaintiff's answering machine without identifying the names of Defendants.

Additionally, 5 other calls which are directly traceable to Defendants, plus 14 "Out of Area" or "Private" calls which Plaintiff believes to have been placed by Defendant Academy's automated system, were made to Plaintiff's house; none of these calls disclosed Defendants' names;

(c)  Defendants violated Mass. Gen. Laws c.93, § 49(b) and Mass. Gen. Laws c.93A, § 2(a), as further interpreted by the Massachusetts Attorney General in 940 Code of Mass. Reg. 7.04(2), by repeatedly contacting Plaintiff after having actual knowledge that all contact regarding the AT&T Account was to be directed to H&C; and

(d)  Defendants violated Mass. Gen. Laws c.93, § 49(c), by communicating with Plaintiff in such a manner as to harass or embarrass him, including, but not limited to, communication with unreasonable frequency. Specifically,

during the week beginning on Monday, April 24, 2006, Plaintiff received 6 direct calls from Defendants and 9 "Out of Area/Private" calls, the latter of which, upon information and belief, were made by Defendant Academy's automated system.

Additionally, on May 2, 2006, Defendants harassed Plaintiff 5 times. Four of those calls were made within the span of only an hour and a half, and 2 calls were only 3 minutes apart. Also, between May 11 and 16, 2006, Plaintiff received 4 calls, and between May 24 and May 30, 2006, Defendants placed 4 more calls directly to Plaintiff. By calling Plaintiff repeatedly, despite actual knowledge that H&C represented Plaintiff, Defendants' actions constitute harassment.

50. Defendants' actions as described herein were willful and knowing.

51. As a result of the above-described violations of the Massachusetts Consumer Protection Act and Massachusetts Debt Collection Act, Defendants are liable to Plaintiff in the sum of Plaintiff's actual, statutory, and multiple damages in addition to reimbursement of attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

(1) Declaratory judgment that Resurgent and Academy's conduct violated the FDCPA;

(2) Declaratory judgment that Resurgent and Academy's conduct violated the Massachusetts Consumer Protection Act;

(3) Declaratory judgment that Resurgent and Academy's conduct violated the Massachusetts Debt Collection Act;

AND, Plaintiff respectfully requests the following relief be entered against Defendants as follows:

(6) Actual damages;

(7) Exemplary damages;

(8) Statutory damages pursuant to 15 U.S.C. § 1692k;

(9) Multiple damages pursuant to M.G.L. c.93 § 49 and M.G.L. c.93A § 9;

(10) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k, M.G.L. c.93 § 49 and M.G.L. c.93A § 9; and

(11) Such other and further relief as may be just and proper.

        Respectfully submitted,
        STEVEN S. GOLD

        By his attorneys

        */s/ Todd B. Gordon*
        Todd B. Gordon (BBO No. 652482)
        Stephen F. Gordon (BBO No. 203600)
        Gordon Haley LLP
        101 Federal Street
        Boston, Massachusetts 02110
        Tel: (617) 261-0100
        Fax: (617) 261-0789
        email: tgordon@gordonhaley.com
               sgordon@gordonhaley.com

        and

        */s/ Steven A. Munson by Todd B. Gordon w/permission*
        Steven A. Munson, Esq. (BBO No. 657892)
        Philip J. Hendel, Esq. (BBO No. 230080)
        Hendel & Collins, P.C.
        101 State Street
        Springfield, MA 01103
        Tel. (413) 734-6411
        Fax: (413) 734-8069
        email: smunson@hendelcollins.com
               phendel@hendelcollins.com

Dated: September 27, 2006

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand trial by jury in this action.

                Respectfully submitted,
                STEVEN S. GOLD

                By his attorneys

                _____
                Todd B. Gordon (BBO No. 652482)
                Stephen F. Gordon (BBO No. 203600)
                Gordon Haley LLP
                101 Federal Street
                Boston, Massachusetts 02110
                Tel: (617) 261-0100
                Fax: (617) 261-0789
                email:   tgordon@gordonhaley.com
                                 sgordon@gordonhaley.com

                and

                _____
                Steven A. Munson, Esq. (BBO No. 657892)
                Philip J. Hendel, Esq. (BBO No. 230080)
                Hendel & Collins, P.C.
                101 State Street
                Springfield, MA  01103
                Tel. (413) 734-6411
                Fax:  (413) 734-8069
                email:   smunson@hendelcollins.com
                                 phendel@hendelcollins.com

Dated: September 27, 2006

P:\Clients\Gold\Academy Collection\Pleadings\Complaint.doc